UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| Chambers of<br>**GEORGE L. RUSSELL, III**<br>United States District Judge | 101 West Lombard Street<br>Baltimore, Maryland 21201<br>410-962-4055 |

December 4, 2020

MEMORANDUM TO COUNSEL RE:  Williams Scotsman, Inc. v. Dryades Young
  Men's Christian Association
  Civil Action No. GLR-20-887

Dear Counsel:

Pending before the Court is Defendant Dryades Young Men's Christian Association's ("Dryades") Motion to Dismiss Pursuant to Rule 12(b)(2) for Lack of Personal Jurisdiction (ECF No. 16).[1] The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will deny the Motion.

On or about May 15, 2017, Plaintiff Williams Scotsman, Inc. ("WillScot") entered into an agreement with Dryades for the lease of a custom-built, ten-classroom modular building complex (the "Lease"). (Compl. ¶ 7, ECF No. 1). The Lease set forth a minimum term of thirty-six months at an agreed monthly rent of $10,773.00, plus applicable taxes and other charges. (Id.). WillScot subsequently constructed the modular classrooms in accordance with the specifications provided by Dryades and notified Dryades that the classrooms were ready to be delivered to the location set forth in the Lease. (Id. ¶ 8). Dryades, however, refused to schedule delivery of the classrooms. (Id. ¶ 9). WillScot remained ready to deliver the classrooms for more than a year after Dryades' initial refusal, but Dryades continued to refuse to schedule delivery or accept the classrooms. (Id. ¶ 11).

On April 3, 2020, WillScot filed a one-count Complaint against Dryades for breach of contract. (Id. ¶¶ 15–21). WillScot seeks compensatory damages, pre- and post-judgment interest, and attorneys' fees. (Id. at 4).

On August 14, 2020, Dryades filed its Motion to Dismiss Pursuant to Rule 12(b)(2) for Lack of Personal Jurisdiction. (ECF No. 16). WillScot filed an Opposition on August 28, 2020. (ECF No. 17). To date, Dryades has not filed a Reply.

---

[1] Also pending before the Court is Plaintiff William Scotsman, Inc.'s Motion for Entry of Default Judgment (ECF No. 7). The Court vacated the Clerk's entry of default against Dryades on July 31, 2020, (ECF No. 15), and Dryades filed its response to the Complaint on August 14, 2020, (ECF No. 16). Accordingly, the Motion for Entry of Default Judgment will be denied as moot.

Dryades moves for dismissal under Rule 12(b)(2) of the Federal Rules of Civil Procedure, which governs motions to dismiss for lack of personal jurisdiction. A motion to dismiss under Rule 12(b)(2) "raises an issue for the Court to resolve, generally as a preliminary matter." Grayson v. Anderson, 816 F.3d 262, 267 (4th Cir. 2016). In these circumstances, "the party asserting jurisdiction has the burden of establishing a prima facie case of jurisdiction." Hawkins v. i-TV Digitalis Tavkozlesi zrt., 935 F.3d 211, 226 (4th Cir. 2019). "This 'prima facie case' analysis resembles the plausibility inquiry governing motions to dismiss for failure to state a claim under Rule 12(b)(6)." Id. In other words, "the district court must determine whether the facts proffered by the party asserting jurisdiction—assuming they are true—make out a case of personal jurisdiction over the party challenging jurisdiction." Id. (citing Sneha Media & Entm't, LLC v. Associated Broad. Co. P Ltd., 911 F.3d 192, 196–97 (4th Cir. 2018)). In reaching its decision, a court may "consider affidavits submitted by both parties," but must "resolve all factual disputes and draw all reasonable inferences in favor of the party asserting jurisdiction." Id. (citing Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 560 (4th Cir. 2014)).

WillScot alleges that this Court has personal jurisdiction over Dryades because the Lease provides, in relevant part, that "all legal actions arising out of or related to this Lease Agreement shall be filed and conducted exclusively in a state or federal court in Baltimore City, Maryland." (Compl. ¶¶ 4, 14). Dryades, however, denies entering into the Lease in the first place, citing testimony from Dryades' then-President and CEO Gregory Phillips that he "did not sign, or otherwise agree to the terms of, the alleged Lease Agreement." (Phillips Aff. ¶ 4, ECF No. 16-2). Moreover, although Phillips acknowledges the parties had prior dealings with one another, he avers that Dryades does not possess any correspondence from WillScot after 2016 about the negotiation, execution, or existence of the Lease. (See id. ¶¶ 5, 6). Dryades also points to apparent irregularities in the Lease itself—although the Lease is dated December 16, 2016 and the delivery date is "on or about" February 6, 2017, the signature for WillScot is dated more than three months after the purported delivery date and the signature for Dryades is undated. For these reasons, Dryades contends that WillScot has not satisfied its burden of demonstrating that Dryades consented to this Court's jurisdiction.

In response, WillScot provides several exhibits and declarations to show that the Lease is valid. First, according to an affidavit from Mark Prejean, who is employed by WillScot as the General Manager for the Gulf Coast Area, Dryades intended to: "(1) remov[e] a 4-unit early childhood complex behind the YMCA's main building on Dryades Street . . . and replac[e] it with a 6-unit early childhood complex"; and "(2) remov[e] a 6-unit classroom complex on the Phillips Street side of the YMCA building and replac[e] it with a new 11-unit complex which held 10 classrooms." (Prejean Aff. ¶¶ 1, 4, ECF No. 17-1). Dryades "executed an agreement for the purchase of a 6-unit early childhood complex in July 2016." (Id. ¶ 5). WillScot then "submitted final pricing to Dryades in the form of a proposed lease for the 10-classroom complex" in December 2016. (Id.). Contrary to Phillips' testimony, Prejean avers that Dryades returned "the executed Lease bearing the signature of Mr. Phillips" in March 2017. (Id. ¶ 6). Then, in April 2017, WillScot submitted a purchase order to its manufacturer in order to begin construction of the ten-classroom complex set forth in the Lease. (Id. ¶ 7). Prejean states that WillScot would not have placed a purchase order in the absence of signed agreement from a customer. (Id.).

WillScot also offers significant evidence to refute Dryades' assertion that there were no communications between the parties about the Lease after 2016. On May 15, 2017, an employee of Hewitt Washington & Associates, the architectural firm Dryades retained to assist with the project, emailed WillScot employee Bryan Giacone about plans for the modular classrooms; Phillips and Dryades employee Delwin Davis were copied on the email. (See Prejean Aff. Ex. A at 1). WillScot also provides an email chain between Prejean and Phillips from early January 2018 in which Prejean sends Phillips a copy of the executed Lease and states that the constructed units have been "sitting idle" and need to be delivered. (Prejean Aff. Ex. B at 1, 3). In February and April 2018, Samantha Bishop, Deputy General Counsel for WillScot, emailed Phillips to explain that Dryades' "[f]ailure to take delivery of the buildings as defined in the Lease is a breach of contract." (Bishop Aff. Ex. A at 2, ECF No. 17-3). After Phillips failed to respond, Bishop forwarded the emails to Daniel Davillier, outside counsel for Dryades, to which Davillier noted "[t]here appears to be a disconnect on the issue of whether there was one contract or two." (Bishop Aff. Ex. B at 1). Finally, in February 2019, Davillier corresponded about the dispute over the Lease with WillScot's outside counsel, William Shea. (Shea Aff. Ex. A at 1, ECF No. 17-5).

Viewing the evidence in the light most favorable to WillScot, as is required when reviewing a 12(b)(2) motion, the Court finds that WillScot has plausibly established that Dryades consented to this Court's jurisdiction by entering into the Lease. Phillips' testimony that he did not sign the Lease is directly contradicted by Prejean's statement that WillScot received the executed Lease with Phillips' signature in March 2017. Moreover, Prejean's account is bolstered by the evidence that WillScot submitted a purchase order and began working with an architect—indeed, the Court finds it plausible that, as Prejean asserted, WillScot would not have moved forward with the project without a signed Lease from Dryades. Finally, despite Phillips' testimony that Dryades does not have any correspondence about the Lease from WillScot after 2016, the record shows that Phillips himself received several emails relating to the Lease after that time. To the extent Dryades contends the Lease is unenforceable or otherwise invalid, this issue may be litigated at a later point; at this stage, however, WillScot has plausibly alleged that Dryades entered into the Lease and thereby consented to this Court's jurisdiction. See CoStar Realty Information, Inc. v. Field, 612 F.Supp.2d 660, 668 (D.Md. 2009) ("[A] valid forum selection clause, standing alone, is enough to confer personal jurisdiction on a nonresident defendant."). Accordingly, the Court finds that WillScot has set forth a prima facie case of personal jurisdiction over Dryades, and Dryades' Motion must be denied.

For the foregoing reasons, Dryades' Motion to Dismiss Pursuant to Rule 12(b)(2) for Lack of Personal Jurisdiction (ECF No. 16) is DENIED and WillScot's Motion for Entry of Default Judgment (ECF No. 7) is DENIED AS MOOT. Dryades is directed to ANSWER the Complaint within fourteen (14) days of the date of this Order.

Despite the informal nature of this Memorandum, it shall constitute an Order of the Court, and the Clerk is directed to docket it accordingly.

Very truly yours,

/s/
George L. Russell, III
United States District Judge